DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1916.

---

William F. Hobbs, trading as William F. Hobbs & Company, Appellee, v. Monarch Refrigerating Company, Appellant.

Gen. No. 21,271. (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed June 19, 1916.

### Statement of the Case.

Bill for an accounting by William F. Hobbs, trading as William F. Hobbs & Company, complainant, against Monarch Refrigerating Company, a corporation, defendant. From a decree awarding the complainant $4,328.70, defendant prosecutes this appeal.

The allegations of the bill were in part that defendant represented that all of complainant's poultry had been destroyed by the fire and this was discovered only after the settlement; that it adjusted the loss with the insurance companies for more than $15,000 and

(1)

deducted from this sum the amount due defendant and paid complainant the balance; that these representations were false and fraudulent and that defendant sold and disposed of complainant's merchandise for more than $24,000 and retained the proceeds thereof.

Defendant contended that the proof did not sustain the material allegations of the bill; that there was a variance between allegations of the bill on the one hand and the findings of the master and decree of the court on the other, and that this variance violated the elementary rule that the allegations of the bill, the proof and the decree must correspond, and therefore constituted reversible error. It was argued that the principal material allegation of the bill was the fraudulent representation made by defendant to complainant that his poultry was wholly destroyed and that he discovered this after the settlement hereinafter mentioned, and that there was no proof to sustain this allegation, and no such finding in the master's report or in the decree.

It appeared that defendant was engaged in the public warehouse and cold storage business, and complainant in the wholesale produce and commission business, dealing principally in poultry. Prior to March 19, 1911, complainant delivered to defendant, for storage, merchandise consisting chiefly of poultry, of the value of more than $21,000. When the poultry was delivered to defendant it issued its warehouse receipts to complainant, also an insurance certificate wherein the defendant agreed to insure the poultry for the full amount of such insurance certificate, the policy to be payable to defendant as trustee for complainant; and in case of loss by fire, defendant was to act as agent for complainant in the collection of the insurance. On said date, defendant had issued to complainant insurance certificates amounting to $18,600. Defendant

paid the premiums and debited complainant with the same. Complainant was indebted to defendant on various notes secured by the poultry stored in the warehouse, the notes aggregating $12,133, and there was a further indebtedness of $1,175.41. On March 19, 1911, a fire started on the fifth floor of the warehouse, which was a seven story and basement building. At the time there was stored in the warehouse 2,250,410 pounds of butter and 1,033,960 pounds of poultry, belonging to different persons, including complainant. All of the poultry and butter was destroyed or damaged by fire and water, and defendant adjusted the loss with the insurance companies. Complainant was dissatisfied with the proposed adjustment and employed an insurance adjuster; defendant also employed an adjuster. The adjustment was carried on and an agreement reached with the insurance companies by defendant alone. The insurance collected on complainant's property amounted to $11,231.63. Complainant objected to the amount of the settlement, but was informed by defendant that a settlement had been made, and on August 16, 1911, after deducting the amount due and owing from complainant, defendant paid complainant the balance, amounting to $2,110.53, and took a receipt which was "in full of all claims and demands against the Monarch Refrigerating Company growing out of the fire of March 19, 1911." After the fire, complainant received from defendant certain of the damaged poultry but was unable to dispose of all of it and returned the balance. Defendant then disposed of all of the salvage, selling 497,861 pounds of damaged poultry for $45,899.26, or an average of 9.2 cents per pound. No record was kept by defendant from which could be ascertained the prices and amount received for complainant's damaged poultry, 91,691 pounds of which was included in the above salvage.

The master found that defendant was liable for

complainant's poultry unaccounted for at the average price of 9.2 cents per pound, or $8,435.57. This amount added to the insurance collected made a total amount due and owing from defendant to complainant of $19,-667.20. Complainant had received $15,418.94, which left a balance of $4,248.26, with interest from August 16, 1911, for which amount the decree was entered.

Defendant contended that as complainant was experienced in handling poultry and was represented by an able fire insurance adjuster, the settlement made August 16, 1911, was conclusive and binding. The master found that at the time of the execution of the receipt by complainant as above mentioned, he knew that all of his property had not been destroyed by fire; that defendant had been selling damaged poultry and had sold some of complainant's; that complainant did not know the amount of money received by defendant from the insurance companies on complainant's property, and did not know the prices at which defendant was selling the damaged poultry nor the amount of money it realized from the sale of the same; that defendant never rendered complainant any statement showing the amount of insurance or the amount of money received from the sale of the damaged poultry.

MANCHA BRUGGEMEYER, for appellant.

SHEPARD, MCCORMICK, THOMASON, KIRKLAND & PATTERSON, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

### Abstract of the Decision.

1. ACCOUNT, § 35*—*when evidence sufficient to support master's findings*. On a bill for an accounting, evidence examined and *held* to support master's findings.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Hobbs v. Monarch Refrigerating Co., 200 Ill. App. 1.

2. APPEAL AND ERROR, § 1458*—*when variance immaterial.* On a bill for an accounting, variance between allegations of bill on the one hand and the findings of the master and the decree of the court on the other, examined and *held* not so material as to warrant a reversal.

3. PRINCIPAL AND AGENT, § 28*—*what degree of good faith required in transactions between.* In dealing with the property of the principal on his own behalf, the utmost good faith is required of the agent, and the burden is upon him to show that such good faith was exercised.

4. CONTRACTS, § 268*—*what evidence sufficient to set aside contract where fiduciary relation exists.* Where a fiduciary relation exists, it is not necessary to establish intentional or actual fraud in order to set aside a contract.

5. PRINCIPAL AND AGENT, § 55*—*when settlement between principal and agent set aside.* Where a warehouseman, in whose warehouse property of plaintiff had been damaged by fire, effected a settlement with insurers with whom it had insured the property for plaintiff's benefit, and thereafter had a settlement with plaintiff without informing him of the amount it received for insurance and salvage, there is such a breach of the fiduciary relation between it and plaintiff as to warrant the court in setting aside the settlement between them in an action for an accounting.

6. ACCOUNT, § 35*—*when burden of proof on agent on bill by principal for an accounting.* On a bill for an accounting by the owner of property against a warehouseman to recover the amount received by defendant as salvage on injury to complainant's property by fire, the burden of showing the number of pounds of salvage and the price received therefor *held,* under the facts of the case, to be upon defendant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.